**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| GEORGE A. DISHMAN, MELANIE GAY DISHMAN, G. AUSTIN DISHMAN, AND CLAIRE E. DISHMAN AS BENEFICIARIES OF THE GEORGE A. DISHMAN, JR. TRUST and JAMES C. DISHMAN, JAMES C. DISHMAN, JR., HILL M. DISHMAN, AND CAROL DISHMAN BUCKLEY AS BENEFICIARIES OF THE JAMES C. DISHMAN TRUST | § § § § § § § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL NO. 1:10-cv-00205 |
| BBVA COMPASS BANK, successor in interest to Texas State Bank | § § § § | |
| *Defendant.* | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, the beneficiaries of the George A. Dishman, Jr. Trust and the James C. Dishman Trust (together, the "Trusts"), file this complaint against Defendant BBVA Compass Bank and respectfully allege as follows:

### I.     PARTIES

1.     Plaintiff George A. Dishman is the primary beneficiary of the George A. Dishman, Jr. Trust and resides in Beaumont, Texas.

2.     Plaintiff Melanie Gay Dishman is a beneficiary of the George A. Dishman, Jr. Trust and resides in Beaumont, Texas

3.     Plaintiff G. Austin Dishman is a beneficiary of the George A. Dishman, Jr. Trust

and resides in Beaumont, Texas.

4.    Plaintiff Claire E. Dishman is a beneficiary of the George A. Dishman, Jr. Trust and resides in Beaumont, Texas.

5.    Plaintiff James C. Dishman is the primary beneficiary of the James C. Dishman Trust and resides in Beaumont, Texas.

6.    Plaintiff James C. Dishman, Jr. is a beneficiary of the James C. Dishman Trust and resides in Beaumont, Texas.

7.    Plaintiff Hill M. Dishman is a beneficiary of the James C. Dishman Trust and resides in Houston, Texas.

8.    Plaintiff Carol Dishman Buckley is a beneficiary of the James C. Dishman Trust and resides in Houston, Texas.

9.    Defendant BBVA Compass Bank ("Compass" or "Trustee") is an Alabama corporation having its principal place of business in Birmingham, Alabama.  Compass may be served through its registered agent in Texas, C T Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.  At all relevant times, Compass served as Trustee of the Trusts.

## II.    JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because all Plaintiffs and Compass are citizens of different states and the amount in controversy, exclusive of interest, costs, and attorney's fees, exceeds $75,000.

11.    This Court has personal jurisdiction over Compass because, at all relevant times, Compass has transacted business in Texas.

12.    Venue is proper in this Court under 28 U.S.C. § 1391 because Compass resides in

this judicial district due to its extensive contacts here, including having a branch office in Beaumont, Texas, *see* 28 U.S.C. § 1391(c), and a substantial part of the property that is the subject of the action is situated here, *see* 28 U.S.C. § 1391(a).

## III. FACTUAL BACKGROUND

13. The Trusts own a combined 1/6 mineral interest in a tract of land in Jefferson County, Texas (the "Tract"), which is situated on a recently developed gas reserve, and described as:

> 538.63 acres, more or less, out of the A. Houston Survey, A-33, Jefferson County, Texas, and being out of the Southeast one-quarter of the aforesaid Survey, and being the same land described as the First Tract in Articles of Association, dated January 3, 1919 by J. T. Lanman et al., recorded in Volume 177, Page 620 of the Deeds of Records of Jefferson County, Texas.

14. The following own the remaining mineral interests in the Tract: Plaintiff George Dishman owns an undivided 1/12 mineral interest; Plaintiff James Dishman owns an undivided 1/12 mineral interest; and other parties own an undivided 2/3 mineral interest.

**The February Leases**

15. In February 2009, Samson Lone Star, LLC ("Samson"), an oil and gas exploration company, approached James Dishman about leasing mineral interests owned by James Dishman and George Dishman in the Tract.

16. Based on the due diligence performed by its landman, Harold Thibodeaux, Samson believed that James and George Dishman owned a combined 1/3 mineral interest in the Tract.

17. In February 2009, prior to any drilling activity on the Tract, James and George Dishman leased their mineral interests in the Tract to Samson in exchange for a 1/4 royalty and a

$350 per acre bonus (the "February Leases").

18.     Also in February 2009, but after the Dishmans had leased their mineral interests to Samson, other mineral owners in the Tract leased their mineral interests in the Tract to Ballard Exploration Co. ("Ballard"), a different oil and gas exploration company.

**Drilling Activity on the Tract**

19.     Ballard began moving drilling equipment onto the Tract on or about June 1, 2009.

20.     Ballard began drilling its first well on the Tract on or about June 6, 2009, and began drilling a second well on the Tract on or about June 22, 2009.

21.     Samson began moving drilling equipment onto the Tract on or about June 18, 2009.

22.     Samson began drilling its first well on the Tract on or about June 21, 2009, and moved a second rig onto the Tract on or about June 25, 2009.

23.     The pace and extent of drilling activity by competing oil and gas exploration companies on the same Tract suggested that it was an excellent prospect and that discovery of oil and gas under the Tract was probable.  The drilling activity on the Tract was well known to the general public as well as to the Trustee.

**The June Lease**

24.     At some point after leasing mineral interests from the Dishmans but before beginning drilling operations on the Tract, Samson realized James and George Dishman only owned a combined 1/6 mineral interest (rather than 1/3) in the Tract.  Samson contacted James Dishman about the discrepancy.

25.     James Dishman then inquired at Compass's Trust department and learned that the

4

remaining 1/6 mineral interest in the Tract was owned by the Trusts.  The Trusts had previously transferred title to some of the Trusts' mineral interests to James and George Dishman individually, but had not transferred title to the 1/6 mineral interest in the Tract, possibly because of confusion caused by the Trusts not owning the surface rights to the Tract.

26.    James Dishman advised Samson that he was going to discuss with the Trustee having the mineral interest in the Tract conveyed to him and George Dishman, as had been intended before, so that Samson could lease that remaining interest in the Tract from them.

27.    Despite having been advised that James and George Dishman were proceeding to obtain title to the minerals, Samson's landman, Harold Thibodeaux, delivered a lease directly to Compass on or about June 12, 2009, wherein Samson offered to lease the Trusts' mineral interest in the Tract in exchange for a 1/4 royalty and a $350 per acre bonus (the "Lease").

28.    Upon learning that Samson had delivered a lease directly to Compass, James Dishman called a representative at Samson who at first denied that the lease was delivered to Compass, but later called back and apologized for Samson delivering the lease.  Delivering the lease to Compass virtually guaranteed that the Trustee would no longer consider transferring title to the minerals to James and George Dishman.  Mr. Dishman suggested that Samson should consider offering he and George Dishman an overriding royalty out of Samson's interest in the Tract's production because, due to Samson's actions, they lost the opportunity to directly negotiate the lease with Samson.

29.    On or about June 16, 2009, James Dishman went to Compass and met with Lois Ann Stanton and Lisa O'Blanc, trust officers of the Trusts, to discuss Compass's plan for handling the Trusts' mineral interests.  At the meeting, Mr. Dishman suggested that Compass

consider leasing to Samson, if it was considering leasing at all, because he felt it would be in the Dishman family's best interest to have all of its mineral rights leased to the same operator. Additionally, however, Mr. Dishman informed Ms. Stanton and Ms. O'Blanc that Ballard had recently commenced drilling operations on the Tract.   Such drilling activity suggested the probable discovery of oil and gas under the Tract.   As a result of the drilling activity, and the fact that the Trustee had not yet leased the Trusts' minerals, the Trustee and the Trusts were in a strong economic bargaining position regarding Ballard and Samson; a much different position than the Dishmans and other lessors of the Tract were in before the commencement of drilling activity on the Tract.   During the discussion, one option discussed was the possibility that the Trusts remain unleased cotenants.   Ms. Stanton and Ms. O'Blanc expressed concern that if the Trusts' mineral interest remained unleased, the Trusts would be working interest owners, bearing risk on the operations on the Tract.   James Dishman advised them that this concern was unfounded, and explained that the Trusts would be carried cotenants, which would be due a net profits interest on their share of production from the Tract if the interest was not leased.

30.   On or about June 18 or 19, 2009, James Dishman called Lisa O'Blanc to inquire about the status of the lease and inform her that Samson was moving a rig onto the Tract.   Mr. Dishman learned during this call that Samson had not yet leased the Trusts' interest in the Tract. Mr. Dishman suggested that Compass not deliver the lease under these circumstances.   Ms. O'Blanc suggested Mr. Dishman call Mark Choplin of Farmers National Company in Tulsa, Oklahoma who was acting as an agent of Compass with respect to handling the Trusts' mineral interests.   Mr. Dishman called and advised Mr. Choplin not to deliver the Lease under the circumstances.

31.     Based on the discussions between James Dishman and the Trustee, as well as the drilling activity and competition to develop the Tract, the Trustee knew or should have known that the Trust was in a position to maximize the return on its assets by either leasing the minerals on more favorable economic terms than those offered in the Lease or remaining an unleased cotenant.

32.     Further, the Compass Trust department was actually advised that the Trusts were in a position to make a better deal than what Samson had offered prior to the commencement of drilling activity on the Tract.

33.     Around that time, Ballard expressed interest in leasing the Trusts' mineral interest in the Tract in exchange for a greater royalty and bonus than that offered by Samson.  Upon information and belief, Ballard actually contacted the Trustee regarding leasing the Trusts' mineral interest.  In any event, the drilling activity on the Tract was well known to the public and to the Trustee; and the keen competition to develop the Tract warranted due diligence before entering into a lease with Samson on the same terms that Samson had offered before drilling commenced.

34.     On or about June 21, 2009, the Dishmans' counsel requested that the Trustee not lease the Trusts' mineral interests to Samson for the terms previously offered.  The Dishmans' counsel made several efforts to communicate with the Trustee by email and telephone to confirm that the Trustee would not lease to Samson on the previous terms.  The Trustee did not timely respond to the communications and did not disclose that it had leased the mineral interests to Samson on the previously offered terms until after the lease had been executed and delivered to Samson.

35.    On or about June 22, 2009, despite having actual knowledge of the Trusts'
advantageous bargaining position and of Ballard's interest in leasing the minerals, Compass
leased the Trusts' 1/6 mineral interest to Samson for a 1/4 royalty and a $350 per acre bonus—
the same consideration received for the February Leases before operations had commenced and
wells had been drilled on the Tract, and considerably less than the market lease rate for such an
interest.

36.    Thereafter, Ms. Stanton reported to the Dishmans that Compass had signed and
delivered the Lease to Samson.

37.    Upon information and belief, the Trustee failed to exercise any due diligence to
determine the market value of the mineral interests owned by the Trusts.

38.    On July 28, 2009, Plaintiff Melanie G. Dishman, who holds a future interest in the
George A. Dishman, Jr. Trust, wrote to Ms. Stanton requesting information in writing about the
Lease, the due diligence Compass performed before entering the Lease, whether Compass had
sought other lessors, and Compass's standard procedures for investigating the value of an oil and
gas lease.  Compass offered to meet with Ms. Dishman in person but refused to provide any
written response.

39.    On August 26, 2009, Ms. Dishman again wrote to Ms. Stanton to remind her of
her earlier request which had not yet been answered.

40.    Despite these repeated requests from a Trust beneficiary regarding Compass's due
diligence on the Lease, Compass has failed to provide the requested information to the
beneficiaries or to explain the basis for its decision to lease on terms that did not reflect the
market conditions at the time of the lease.

41.     The wells drilled on the Tract have resulted in substantial oil and gas production.

## IV.     CAUSES OF ACTION

**Count I:  Breach of Fiduciary Duty**

42.     Plaintiffs hereby allege and incorporate each and every allegation set forth above into this cause of action.

43.     As Trustee of the Trusts, Compass had a fiduciary duty to "exercise the judgment and care under the circumstances then prevailing that persons of ordinary prudence, discretion, and intelligence exercise in the management of their own affairs." *See* TEX. PROP. CODE § 113.056.

44.     Compass was advised, had actual knowledge, and through ordinary due diligence and management should have known, that remaining a carried cotenant on the Tract was, in simple terms, a much better deal for the Trust than that offered in the Lease.   Specifically, a carried cotenant would be due a net profits interest in all of the production on the Tract—a much larger share of production than due under the Lease under nearly all circumstances—without bearing any additional risk.

45.     At the time it executed the Lease, Compass also had actual knowledge or should have known that the Trusts' mineral interests in the Tract could have been leased for higher bonus and royalty rates than those offered in the Lease.

46.     Alternatively, Compass failed to conduct due diligence to determine the economic value of the mineral interest in the Tract.

47.     By executing the Lease for only a 1/4 royalty and $350 per acre bonus—a deal far inferior to either remaining a carried cotenant or leasing at the market rate then available—

Compass breached its fiduciary duty of exercising the skill and prudence that an ordinary, capable, and careful person would use in the management of the Trusts' assets.

48.     As a result of Compass's wrongful actions, the Trusts have incurred significant financial loss given the production from the Tract to date and the anticipated future production. The Trust beneficiaries are entitled to damages in an amount to be proved at trial.

**Count II:  Breach of Trust, TEX. PROP. CODE § 114.001**

49.     Plaintiffs hereby allege and incorporate each and every allegation set forth above into this cause of action.

50.     Section 114.001(c) of the Texas Property Code provides:

> (c) A trustee who commits a breach of trust is chargeable with any damages resulting from such breach of trust, including but not limited to:
>
> (1) any loss or depreciation in value of the trust estate as a result of the breach of trust;
>
> (2) any profit made by the trustee through the breach of trust; or
>
> (3) any profit that would have accrued to the trust estate if there had been no breach of trust.

51.     Compass's conduct, including leasing the Trusts' mineral interests for below the market rate and without performing adequate due diligence, constitutes a violation of the statutory duty Compass owed to the Trust beneficiaries.

52.     As a result of Compass's wrongful actions, the Trust beneficiaries are entitled to all damages resulting from the breach of trust.

**Count III:  Breach of Fiduciary Duty of Full Disclosure**

53.     Plaintiffs hereby allege and incorporate each and every allegation set forth above into this cause of action.

54.   Plaintiff Melanie G. Dishman has twice written to Compass requesting information about the Lease.

55.   As Trustee, Compass owed a fiduciary duty of full disclosure of all material facts to the Trust beneficiaries that might affect their rights.  Specifically, when a beneficiary makes reasonable requests for information concerning a significant transaction involving trust assets, the Trustee is obligated to disclose the information to the beneficiaries.

56.   Despite two written requests, Compass has refused to explain in writing to the Trust beneficiaries its due diligence and decision-making process in entering into the Lease, and has refused to provide documentation reflecting its efforts.

57.   Compass has therefore breached its fiduciary duty of full disclosure of all material facts that affect the Tract, a material asset of the Trusts, and should provide an accounting and return any compensation previously charged that is in excess of its reasonable compensation.

**Count IV:  Removal of Compass as Trustee**

58.   Plaintiffs hereby allege and incorporate each and every allegation set forth above into this cause of action.

59.   Compass has breached its fiduciary duty by entering into the Lease at a below-market bonus and royalty rate instead of leasing at the market rate or remaining unleased, which would have given rise to a net profits interests in all of the production on the Tract without bearing any risk should there have been no production.

60.   Plaintiffs believe that the amounts charged by Compass for its services as Trustee have been excessive, particularly in light of Compass's breach of fiduciary duty in entering into the Lease without performing adequate due diligence and without retaining the services of a

knowledgeable oil and gas consultant to advise Compass with respect to the Tract, market value and conditions, and the benefits of remaining an unleased carried cotenant.

61.     Compass should therefore be removed as Trustee and should return any compensation previously charged that is in excess of its reasonable compensation.

## V.     JURY DEMAND

62.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

## VI.     PRAYER

63.     WHEREFORE, Plaintiffs respectfully pray for a judgment and order against Compass as follows:

A.     That Compass be removed as Trustee;

B.     that a new trustee be appointed to succeed Compass as Trustee;

C.     that Compass provide a full account of all Trust assets;

D.     that Compass be required to account for all expenditures of time and labor in performance of its duties as Trustee;

E.     that Compass be ordered to return any compensation previously charged that is in excess of its reasonable compensation;

F.     for an award of actual damages;

G.     for an award of attorney's fees and costs as allowed by law;

H.     for an award of prejudgment and post-judgment interest on all sums awarded; and

I.     for such other and further relief as the court may deem just, equitable, and appropriate.

Dated: *April 9, 2010*

Respectfully submitted,

By: _____
Barrett H. Reasoner
T.B.A. No. 16641980
GIBBS & BRUNS LLP
1100 Louisiana, Suite 5300
Houston, Texas   77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903

**ATTORNEY-IN-CHARGE FOR PLAINTIFFS**

Of Counsel:
Mark A. Giugliano
T.B.A. No. 24012702
Anthony N. Kaim
T.B.A. No. 24065532
GIBBS & BRUNS, L.L.P.
1100 Louisiana, Suite 5300
Houston, Texas   77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903